JOHN H. POPE, *Plaintiff in Error,* v. THE STATE OF
FLORIDA, *Defendant in Error.*

Opinion filed October 16, 1922.

Petition for rehearing denied January 9, 1923.

1. Where a continuanace of a cause on the ground of want of
   preparation for the trial of the defendant, is denied, the ap-
   pellate court will not disturb the ruling where it appears that
   the trial judge allowed ample time for conserting the defense
   before and after the actual trial was begun.

2. Where the record of the proceediings show a fair and orderly
   trial and that a jury was obtained before the defendant ex-
   hausted his peremptory challenges, a denial of a continuance
   on the ground of public prejudice against the defendant be-
   cause of the charge on which he was indicted will not be dis-
   turbed by the appellate court.

3. Where one of the two Judges of the Circuit Court for Duval
   is, during the preliminary stages of a trial, rendered individ-
   ually disqualified under the statute by the required allega-
   tions of prejudice, the other Judge of the Circuit Court in and
   for Duval County, may proceed with the trial, under an ex-
   ecutive order designating him to preside at the trial of the
   case, even though the order which had been duly executed had
   not in fact reached the judge before he assumed jurisdiction
   and proceeeded with the trial.

4. The examination of Jurors on the *voir dire* in criminal trials
   is not to be confined strictly to the questions formulated in
   the statute, but should be so varied and elaborated as the cir-
   cumstances surrounding the jurors under examination in rela-
   tion to the case on trial would seem to require in order to ob-
   tain a fair and impartial jury whose minds are free of all
   interest, bias or prejudice.

5. Hypothetical questions having correct reference to the law of the case that aid in determining whether challenges for cause or peremptory, are proper, may in the sound and reasonable discretion of the trial court, be propounded to veniremen on *voir dire* examination.

6. In a prosecution for a capital offense the following question was propounded to the jurors on *voir dire*: "In the event you are taken and accepted as a juror in this case, and the court instructs you that where several persons combine together to commit an unlawful act, each is criminally responsible for the act of his associates committed in the futherance or prosecution of the common design; and if several persons combine to do an unlawful act and in the prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as their own, and all are equally criminal. Would you render a verdict of guilty in this case which would carry with it the death penalty, if you believed from the evidence in this case to the exclusion of and beyond every reasonable doubt that the defendant, John H. Pope, had combined with one Frank Rawlins, the co-defendant in this case, to commit a robbery and that in the prosecution of that robbery a culpable homicide occurred, and that Mr. Pope was either actually or constructively present, aiding and abetting in the commission of that homicide." *Held* no error. The question considered as an entirety was designed to ascertain if the veniremen had conscientious scruples against enforcing the law stated in the question, which rule of law had been announced by the trial judge as being applicable to the case then being tried under the indictment as framed.

7. When several persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design; and if several persons combine to do an unlawful

act, and in the prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own, and all are equally criminal.

8. In view of the statutory definition of murder in the first degree, when an indictment charges murder to have been committed "from a premeditated design to effect the death of the person killed or any human being," there may be a conviction of murder in the first degree upon proof that the homicide was committed in the perpetration or attempt to perpetrate any of the felonies named in the statute" defining murder in the first degreee i. e. "arson, rape, robbery or burglary." Such an indictment sufficiently states the nature and cause of the accusation.

9. A principal in the first degree and a principal in the second degree are both principals and are punishable alike. The degrees are designed merely to indicate that one actually committed the felonious act, and that the other was present (actually or constructively) aiding and abetting the felonious act. Both are equally guilty; and it is not material which one is alleged to have actually committed the felonious act, if it is duly proven that one committed the act and that the other was present and aided and abetted the alleged felony.

10. In a prosecution for murder in the first degree of one who is being tried as a principal in the first degree and as principal in the second degree by being present aiding and abetting a murder perpetrated in committing a robbery, it is not necessary to prove that either of the principles premeditated the murder that was committed by the principal felon in perpetrating the robbery.

11.   While a principal in a murder trial must either have actually committed the felonious act or else have been present aiding and abetting his partner in the crime, the presence of the aider and abetter need not have been actual, but it is sufficient if he was constructively present, provided the aider, pursuant to a previous understanding, is sufficiently near and so situated as to abet or encourage, or to render assistance to, the actual perpetrator in committing the felonious act or in escaping after its commission.

12.   The judgment of conviction accords with the verdict which has ample support in the evidence adduced. No material or harmful errors appear in the record.

A Writ of Error to the Circuit Court for Duval County, George Couper Gibbs, Judge.

Affirmed.

*Edgar W. Waybright,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, *J. B. Gaines,* Assistant Attorney General, *Frank Wideman,* State Attorney, and *William A. Hallowes, Jr.,* for the State.

WHITFIELD, J.—The indictment herein contained three counts, the third count was eliminated by the court at the instance of the State, leaving the first and second counts on which the defendant John H. Pope was tried as follows:

"IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

"THE GRAND JURY OF THE STATE OF FLOR-IDA, empaneled and sworn to inquire and true presentment make in and for the County of Duval, upon their

oath do present that Frank Rawlins and John H. Pope, late of the County of Duval and State of Florida, on the fourth day of September in the year of our Lord one thousand nine hundred and twenty-one, in the County and State aforesaid, feloniously, wilfully and of malice aforethought, and from a premeditated design to effect the death of one George H. Hickman, in and upon the said George H. Hickman an assault did make, and that the said Frank Rawlins and John H. Pope, a certain pistol then and there being charged with gunpowder and divers metal bullets which they, the said Frank Rawlins and John H. Pope, in their hands then and there had and held against, at and upon the said George H. Hickman, then and there feloniously, wilfully and of their malice aforethought, and from a premeditated design to effect the death of the said George H. Hickman, did discharge and shoot off, and that the said Frank Rawlins and John H. Pope, with one of the metal bullets aforesaid, by force of the gunpowder aforesaid, out of the pistol aforesaid, by them, the said Frank Rawlins and John H. Pope, so as aforesaid discharged and shot off, him, the said George H. Hickman, in and upon the head of the said George H. Hickman, then and there feloniously, wilfully and of their malice aforethought, and from a premeditated design to effect the death of the said George H. Hickman, did strike, penetrate and wound, giving to the said George H. Hickman, then and there with one of the metal bullets aforesaid, out of the pistol aforesaid, so as aforesaid shot off, in and upon the head of the said George H. Hickman, one mortal wound, the breadth and depth of which mortal wound is to the Grand Jurors unknown, of which mortal wound the said George H. Hickman then and there died, and so the Grand Jurors aforesaid, do say that the said Frank Rawlins and John H. Pope, in manner and form aforesaid, feloniously, wil-

fully and of their malice aforethought, and from a premeditated. design to effect the death of the said George H. Hickman, the said George H. Hickman did kill and murder; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

2. And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that Frank Rawlins and John H. Pope, late of the County of Duval and State of Florida, on the fourth day of September, in the year of our Lord one thousand nine hundred and twenty-one, in the County and State aforestid,. feloniously, wilfully and of their malice aforethought and from a premeditated design to effect the death of one George H. Hickman, in and upon the said George H. Hickman, an assault did make, and that the said Frank Rawlins, a certain pistol then and there being charged with gunpowder and divers metal bullets which he the said Frank Rawlins in his hands then and there had and held against, at and upon the said George H. Hickman, then and there feloniously, wilfully and of his malice aforethought, and from a premeditated design to effect the death of the said George H. Hickman, did discharge and shoot off; and that the said Frank Rawlins with one of the metal bullets aforesaid, by force of the gunpowder aforesaid, out of the pistol aforesaid, by him, the said Frank Rawlins so as aforesaid discharged and shot off, him the said George H. Hickman, in and upon the head of the said George H. Hickman, then and there feloniously, wilfully and of his malice aforethought, and from a premeditated design to effect the death of the said George H. Hickman, did strike, penetrate and wound, giving to the said George H. Hickman then and there with one of the metal bullets aforesaid, out of the pistol aforesaid, so as aforesaid shot off, in and upon the head of the said

George H. Hickman one mortal wound, the breadth and depth which is to the Grand Jurors unknown, of which mortal wound the said George H. Hickman then and there died.

And the Grand Jurors aforesaid, upon their oath aforesaid, do further present that the said John H. Pope then and there feloniously, wilfully and of his malice aforethought, and from a premeditated design to effect the death of the said George H. Hickman, was then and there present, aiding, abetting, helping, assisting, comforting, procuring, encouraging, counseling and commanding the said Frank Rawlins, the murder of him, the said George H. Hickman in manner and form aforesaid to do and commit. And so the Grand Jurors aforesaid do say that the said Frank Rawlins and John H. Pope, in manner and form aforesaid, feloniously, wilfully and of their malice aforethought, and from a premiditated design to effect the death of the said George H. Hickman, the said George H. Hickman did kill and murder; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.''

An application of the defendant Pope for a bill of particulars to the second count was overruled.

The defendants were arraigned and severally pleaded not guilty.

Applications by the defendant Pope for a change of venue and for continuance were denied.

Proceedings under the statute to disqualify the presiding judge resulted in the retirement on September 20, 1921, of Honorable D. A. Simmons, Circuit Judge for Duval County and his place on the bench was taken by Honorable George Couper Gibbs, Judge of the Fourth Judicial Cir-

cuit, which Circuit includes Duval County, an order of the Governor having been issued on September 20, 1921, designating Judge Gibbs to proceed as judge of the court especially in the trial of this cause. A severance was granted to the defendant John H. Pope, and he was found guilty of murder in the first degree and recommended to the mercy of the court.

A motion for a new trial was denied and the defendant John H. Pope was sentenced to life imprisonment. Writ of error was taken to this court.

The homicide was committed about 10 p. m. September 4, 1921. The actual perpetrator was caught as he tried to escape from the scene of the crime. The defendant in this case was arrested on the 10th, and was indicted as a principal in the murder on September 13th, 1921, was arraigned on the 14th and trial set for September 19, 1921. Counsel for the defendant was secured on September 16, 1921. A motion was made for a continuance on the ground of want of preparation and for public prejudice against the defendant because of the charge on which he was indicted. This motion was denied, and in view of all the circumstances shown by the record, and the time allowed by the court for concerting the defense before and after the actual trial was begun, it does not appear that error was committed in denying a continuance. The subsequent proceedings showing a fair and orderly trial indicate that the defendant could not have been harmed by the denial of a continuance. The same may be said as to another refusal to continue the case after a severance was had at the instance of the defendant Pope. No error was committed in refusing a change of venue. The jury was obtained before the defendant exhausted his peremptory challenges.

The Judge who tried the case was Judge of the Circuit

in which Duval County is situated, and he properly began to preside in the case on September 20, 1921, when Judge Simmons, who is Circuit Judge of Duval County under Section 42, Art. V of the Constitution, had retired after being disqualified under the statute. An executive order was executed on September 20, 1921, designating Judge Gibbs to preside which was sufficient even though the executive order had not reached the Judge where he was holding court. Judge Gibbs had jurisdiction to try the cause by virtue of being Judge of the Circuit that includes the county in which the crime was committed and the trial was had. such Judge not being disqualified.

On the *voir idre* examination the following question was asked by State Attorney of the jurors who served in the case: ''Q. In the event you are taken and accepted as a juror in this case, and the court instructs you that where several persons combine together to commit an unlawful act, each is criminally responsible for the act of his associates committed in the furtherance or prosecution of the common design; and if several persons combine to do an unlawful act and in the prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates: His act is their act, as well as his own, and all are equally criminal. Would you render a verdict of guilty in this case which would carry with it the death penalty, if you believe from the evidence in this case to the exclusion of and beyond every reasonable doubt that the defendant, John H. Pope, had combined with one Frank Rawlins, the

co-defendant in this case, to commit a robbery and that in the prosecution of that robbery a culpable homicide occurred, and that Mr. Pope was either actualy or constructively present, aiding and abetting in the commission of that homicide?

"Mr. Waybright: We object to that question, if the court please, upon the ground that it has a tendency to confuse the mind of the talesman and to make him believe, if he should be accepted as a juror, that he would be bound under the question to bring in a verdict for the State.

"2. Upon the ground that it does not correctly state the law in this State, in that it does not take into consideration that the act, with which the defendant in this case is charged, must have been committed in the pursuance of the common design, into which the defendant and others may have entered.

"3. Upon the ground that it does not state a correct proposition of law, in that under this question the defendant John H. Pope would be guilty of murder in the first degree upon such a state of facts alleged here, when under the law of this State it must be proved that the defendant John H. Pope entertained a premeditated design to effect the death of George H. Hickman, or some other person, or that he knew that Frank Rawlins entertained a premeditated design to effect the death of George H. Hickman or some other person.

"4. Because it states an incorrect proposition of law in that it assumes that robbery, regardless of the manner in which the robbery was committed, or decided upon, was such a crime as a natural and probable consequences might have been supposed to be a homicide.

"5. That the word 'constructive' calls for the conclusion of the talesman, not being defined in this question.

"The Court: Objection overruled; exception noted."

The propriety of this proceeding if properly assigned as error, is argued in supplementary briefs presented after the case was submitted to this court; but in view of the nature of the prosecution, the question will be considered.

The examination of jurors on the *voir dire* in crimnial trials is not to be confined strictly to the questions formulated in the statute, but should be so varied and elaborated as the circumstances surrounding the jurors under examination in relation to the case on trial would seem to require in order to obtain a fair and impartial jury whose minds are free of all interest, bias or prejudice. Pinder v. State, 27 Fla. 370, 8 South. Rep. 837.

Hypothetical questions having correct reference to the law of the case that aid in determining whether challenges for cause or peremptory are proper, may in the sound and reasonable discretion of the trial court, be propounded to veniremen on *voir dire* examination .

The proposition of law stated in the hypothetical question is taken from Henry v. State, 81 Fla. 763, text 767, 89 South, Rep. 136, and is in principle applicable to this case; and the latter part of the question accords with law, in that it aids in determining whether the jury may properly be challenged. The question was designed to ascertain if the veniremen had conscientious scruples against enforcing the law stated in the question, which rule of law had been announced by the court as being applicable to the case under the indictment. See Olive v. State, 34 Fla. 203, 15 South. Rep. 925; 39 Fla. 178; Metzger v. State, 18 Fla. 481; Sec. 6004 Rev. Gen. Stats. 1920. The question was not misleading or confusing and did not call for a pre-judgment of the case or of any supposed case on the facts. The nature and purpose of the question in this

case are quite different from the one propounded by the defendant and excluded by the trial court in the Dicks case, *infra*.

Even if the asking of such hypothetical questions on *voir dire* is not good practice, no right of the defendant was violated in propounding the question objected to, and in consideration of the issues and the evidence including the testimony of the defendant, the question could not reasonably have harmed the defendant.

The remarks of the State Attorney on final argument in reminding the jurors of their answers to the hypothetical question were not clearly an abuse of argument even if the point were properly presented by objection, ruling and exception to require a review by this court.

In Dicks v. State, recently decided, it was held not error to exclude a hypothetical question on *voir dire* propounded by the defendant. The discretion of the trial court was not abused and the defendant was not harmed by the exclusion of the question.

The first count of the indictment charges Frank Rawlins and John H. Pope as principals in the commission of murder in the first degree. The second count in effect charges Frank Rawlins with being a principal in the first degree and John H. Pope with being a principle in the second degree, in the commission of murder in the first degree. The allegation of the second count is that Frank Rawlins ''from a premeditated design to effect the death of George H. Hickman'' did inflict the mortal wound, and that John H. Pope * * * from a premeditated design to effect the death of George H. Hickman, was then and there present aiding, abetting, helping, assisting, comforting, procuring, encouraging, counseling and command-

ing the said Frank Rawlins, the murder  *  *  *  to commit."

The statutes provide:

"The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery or burglary, shall be murder in the first degree, and shall be punishable by death." Sec. 1, Chap. 8470, Acts of 1921. Upon a recommendation to mercy life imprisonment is imposed.

"Whoever aids in the commission of a felony, or is accessory thereto, before the fact, by counseling, hiring, or otherwise procuring such felony to be committed, shall be punished in the same manner prescribed for the punishment of the principal felon." Sec. 5008 Rev. Gen. Stat. 1920; Buie v. State, 68 Fla. 320, 67 South. Rep. 102.

"The principle is well established that, when several persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design and if several persons combine to do an unlawful act, and in the prosecution of the common object a culpable homicide reults, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own, and all are equally criminal." Henry v. State, 81 Fla. 763, 89 South. Rep. 136.

In Sloan v. State, 70 Fla. 163, 69 South. Rep. 871, it was held that in view of the statutory definition of murder in the first degree, when an indictment charges murder to have been committed "from a premeditated design to effect the death of the person killed or any human being," there may be a conviction of murder in the first degree upon proof "that the homicide was committed in the perpetration or attempt to perpetrate any of the felonies named in the statute" defining murder in the first degree i. e. "arson, rape, robbery or burglary." See also Sutton v. State, decided at the last term. It was also in effect held in the Sloan case that such an indictment sufficiently stated the nature and cause of the accusation. It is contended that the rule announced in the cited Sloan case is not applicable as against the defendant Pope who is charged as a principal in the second degree and who was not actually present when the homicide was committed.

A principal in the first degree and a principal in the second degree are both principals and are punishable alike. The degrees are designed merely to indicate that one actually committed the felonious act, and that the other was present (actually or constructively) aiding and abetting the felonious act. Both are equally guilty, and it is not material which one is alleged to have actually committed the felonious act, if it is duly proven that one committed the act and that the other was present and aided and abetted the alleged felony. See Myers v. State, 43 Fla. 500, 31 South. Rep. 275; Bryan v. State, 19 Fla. 864; Montague v. State, 17 Fla. 662; Albritton v. State, 32 Fla. 358, 13 South. Rep. 955; Buie v. State, 68 Fla. 320, 67 South. Rep. 102; Sec. 5008 Rev. Gen. Stats. 1920; 1 Michie on Homicide, p. 37.

As the defendant Pope is indicted as a principal, the allegations are sufficient to state the nature and cause of

the accusation against him to satisfy the requirements of Section 11 of the Declaration of Rights of the Constitution.

Where the homicide is to be shown by proof that it was perpetrated from a premeditated design to effect the death of the person killed or some human being, it has been held that when a defendant charged as a principol in the second degree is shown not to have actually committed the felonious act, but to have been present and to have aided and abetted in the commission of the felony, it is necessary to show that he knew or believed that the actual perpetrator intended to kill or that the person aiding and abetting acted upon a premeditated design to take human life.    Savage and James v. State, 18 Fla. 909; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Henry v. State, *supra*.

In these cases the homicide was committed pursuant to a concerted unlawful assault making premeditated design an essential element of proof of murder in the first degree, and the unlawful killing was not committed in the perpetration of a robbery, which is a different definition of murder in the first degree, that may be proven under an allegation that the homicide was perpetrated "from a premeditated design to effect" death.   As it is not necessary in order to show murder in the first degree to prove a premeditated design of the principal who actually committed the robbery where the "unlawful killing" was perpetrated in the robbery, it is not necessary to prove that the other principal who was present actually or constructively aiding and abetting in the robbery had a premeditated design to effect the death of the person killed in the robbery of him or that the aider and abettor knew or believed the other principal intended to kill.   If the accused was actually or constructively present aiding and abetting the

robbery and the "unlawful killing" was committed in the perpetration of or in the attempt to perpetrate the robbery, he is equally guilty of the murder with the other principal even though prior to the robbery there was no premeditated design by either to commit a homicide. 29 C. J. 1073. In this case evidence was adduced that the defendant who is charged with being present aiding and abetting the first degree murder, procured and gave the other principal the pistol with which the homicide was committed, together with a mask and rope with definite instructions how to rob the deceased. Not only is an "unlawful killing of a human being" shown as a result of robbery, but on inference of premeditated design on the part of both principals to kill if necessary or expedient to the robbery may fairly be drawn from the evidence. Likewise an intent if resisted to kill the person robbed may be inferred from the evidence as to the concerted preparation for the robbery, therefore it was not error to charge that the statutory definition of murder in the first degree, when the homicide is committed in perpetrating a robbery, has reference to robbery by one armed with a dangerous weapon having an intent if resisted to kill the person robbed. The statute provides that "the unlawful killing of a human being * * * when committed in the perpetration of * * * robbery * * * shall be murder in the first degree." An "unlawful killing" while robbing is by the statute murder in the first degree.

Evidence of the defendant Rawlins and of others was adduced to show that a few days prior to the homicide Pope pointed out the deceased, Hickman, to Rawlins on the street as one to be robbed at his place of business near by; that Pope furnished Rawlins with the pistol used by Rawlins in committing the homicide; that Pope also furnished Rawlins with a mask and a rope; that Pope borrowed an auto-

mobile stating to the owner that " he was going to stick
up the Palace Theatre," in which automobile he took
Rawlins to the place on Bay Street where Pope was to wait
with the engine of the automobile running for Rawlins'
return with the fruit of the robbery; that Pope and Rawlins
left the automobile on Bay street around 9 p. m. and walked
within a block to or near the southeast corner of Forsyth
and Ocean streets opposite the southwest corner of Forsyth
and Ocean streets where the Palace Theatre was, in which
theatre the deceased Hickman had his office as manager
of the theatre; that Pope there told Rawlins how and where
to find Hickman's office; that Pope gave Rawlins fifty-five
cents to pay his way into the theatre with a view to the
robbery; that Rawlins committed the robbery and mur-
der after seeing one or more acts of the show; that Pope was
seen by several persons during the interval between 9 and
10 p. m. at the designated place on Bay street seated in
an automobile, one witness, Mrs. Parks, who was standing
for a few minutes on the street waiting for a street car,
near where Pope was seen, stating twice that the engine of
the automobile was running as it stood on Bay street, and
she as well as others, state that Mr. Pope was seated in the
automobile looking up or toward Ocean Street, down which
street Rawlins did hurriedly go from the next street north,
Forsyth, with the money immediately after the robbery and
homicide of Hickman by Rawlins in the Palace Theatre
on the corner of Forsyth and Ocean streets; that other
witnesses who saw Mr. Pope seated in the standing auto-
mobile on Bay Street did not notice whether the engine of
Mr. Pope's car was running because they were passing in
other cars and did not hear or notice whether or not the
engine in Mr. Pope's car was running; that Mr. Pope told
Rawlins he would be at or near the car at the place on
Bay street where Pope and Rawlins left the car when

Pope went with Rawlins to a point opposite the Palace Theatre to tell Rawlins how to find Hickman's office, and that Pope would have the engine running to take Rawlins as he returned from the theatre, to Pope's office where the two would divide the money obtained in the robbery; that when Rawlins just about or after 10 p. m. committed the homicide and the robbery of Hickman in his office in the Palace Theatre, he hurriedly left the building with the money, and was followed and caught by an officer after he crossed Ocean Street and was nearing Bay Street on the east side of Ocean street going hurriedly in the direction of the point on the south side of Bay street where it was testified Mr. Pope was, a short time before, seen seated in the car looking towards Ocean Street with the engine running, as testified to by Mrs. Parks and others who saw Mr. Pope and knew him. There is also testimony that Mr. · Pope was counsel for Rawlins in a trial of the latter for larceny the week before; that Rawlins had paid Mr. Pope nothing for his services and that the two had been seen together on the street. Mr. Pope testified that he went with Rawlins to the designated point on Bay Sereet at the stated hour in the borrowed car, but for another purpose, and that he there awaited Rawlins' return from a designated lawful errand. Mr. Pope specifically denied giving Rawlins the pistol or the rope or the mask; denied giving Rawlins any instructions or information as to a robbery of Hickman or any one and denied other testimony that tended to prove the crime for which he was being tried. Many important phases of the testimony are given by Rawlins alone, but he is corroborated in some particulars, Mr. Pope alone denying essentials of his testimony. The jury settled the conflicts in the testimony.''

While a principal in a murder trial must either have actually committed the felonious act or else have been pres-

ent aiding and abetting his partner in the crime, the presence of the aider and abetter need not have been actual, but it is sufficient if he was constructively present, provided the aider, pursuant to a previous understanding, is sufficiently near and so situated as to abet or encourage, or to render assistance to, the actual perpetrator in committing the felonious act or in escaping after its commission. See Baldwin v. State, 46 Fla. 115, 35 South. Rep. 220; People v. Lawrence, 143 Cal. 148, 76 Pac. Rep. 893, 68 L. R. A. 193; 16 C. J. p. 126; 1 R. C. L. p. 139; 1 Michie on Homicide, p. 37. See also Sec. 5008 Rev. Gen. Stats. 1920; Buie v. State, 68 Fla. 320, 67 South. Rep. 102.

In this case there is evidence that Mr. Pope counseled with Rawlins to rob Hickman at the particular time and place and that while Rawlins was absent from Pope for the purpose of perpetrating the robbery, Mr. Pope, pursuant to his understanding with Rawlins, was in the automobile at the place on Bay street where Rawlins testifies Pope was to await his return with the money after the robbery and where Pope states he took Rawlins and was awaiting Rawlins' return from a specified lawful errand; and when Rawlins was caught just after the robbery and homicide, he was hurriedly going in the direction of and was quite near the place where Mr. Pope was in waiting and in a position to aid Rawlins' escape with the money which Rawlins testified they agreed to divide between themselves in Mr. Pope's office to which point Mr. Pope was to take Rawlins in the car. Mr. Pope was sufficiently near the scene of the robbery, with the car to aid Rawlins in his escape with the money, and there is ample evidence that this was his agreed purpose beginning before the robbery so as to make Pope who was in the next street south, constructively present, aiding and abetting the robbery pursuant to a previous understand-

ing as to the particular robbery. The "unlawful killing" was "committed in the perpetration of robbery" and is by the statute declared to be murder in the first degree. The evidence as to previous counseling, aiding and abetting of Rawlins by Pope and the presence of Pope pursuant to agreement at a point sufficiently near the scene of the robbery and homicide to enable him to assist Rawlins in escaping after the contemplated crime, is ample to show such constructive presence of Mr. Pope pursuant to a previous understanding and in a position and with an intent to aid Rawlins in escaping from the scene of the robbery and homicide, to make Pope a principal in the second degree to the murder. Mr. Pope's own testimony shows he was at the designated place on Bay street in the automobile awaiting the return of Rawlins, and it was for the jury to determine from the conflicting testimony of Pope and Rawlins whether Pope as testified by Rawlins was at the point for the purpose of aiding Rawlins to escape after the robbery counseled by Pope or whether Mr. Pope was at the place as he testified awaiting Rawlins' return from a lawful errand. There is evidence of the owner of the automobile corroborating the testimony of Rawlins as to the use to be made of the automobile, but not that of Mr. Pope. Upon the theory of conspiracy to commit a felony with a resulting homicide, there is evidence to show the guilt of Pope as principal to murder in the first degree. Wharton on Homicide 3rd Ed.) (Secs. 418, 438, 444.

There is testimony by Rawlins that the pistol shot with which he killed Hickman was accidentally fired; but as it was done in the course of the robbery, it was not necessary that the shooting should have been intentional. It was an "unlawful killing" while committing a robbery that had been planned, and such a result should reasonably have been contemplated as probable, because the

pistol was furnished and carried to the scene of the robbery. And whether the shooting was actually contemplated or intended or not, it grew out of the unlawful conspiracy and preparation to rob, and the principals in the robbery are guilty of the resulting homicide in the degree defined by the statute.

Such other matters as may have been properly presented for decision are either sufficiently covered by the discussion or are not material or harmful in view of the evidence and the charges given.

The case was obviously well conducted at the trial before a judge who was careful in his rulings to preserve the essential rights of the defendant and to correct supposed errors in admitting testimony or otherwise that may have appeared to affect the defendant adversely, and the verdict has ample support in the evidence adduced.

Affirmed.

TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., dissents.

BROWNE, C. J., dissenting.—In the case of Dicks v. State, decided at the January Term of this court, one of the assignments of error was based upon the refusal of the court to permit the defendant to ask the talesmen this hypothetical question: "If, in this case, the defendant claims that the homicide was committed by him in self-defense, then a material fact for you to determine from the evidence adduced at this trial would be who was the aggressor in the fatal difficulty. Then after you have heard all the evidence in this case, and the charge of the court,

there was a reasonable doubt in your mind as to who was the aggressor in the fatal difficulty, would you then give the defendant the benefit of that reasonable doubt and vote to acquit him?"

In passing on the legality of such questions to prospective jurors when examined on their *vior dire,* we said: "Prospective jurors are examined on their voir dire for the purpose of ascertaining if they are qualified to serve, and it is not proper to propound hypothetical questions purporting to embody testimony that is intended to be submitted covering all or any aspect of the case, for the purpose of ascertaining from the juror how he will vote on such a state of the testimony. Such questions are improper, regardless of whether or not they correctly epitomize the testimony intended to be introduced.

To propound to a juror a question purporting to contain an epitome of the testimony subsequently to be introduced and ask whether he would acquit or convict upon such testimony, would have the effect of ascertaining his verdict in advance of his hearing the sworn testimony of the witness.

"The rule governing the scope of the inquiry into the qualifications of a person called for jury duty, is thus laid down in 16 R. C. L. 281; 'It is a rule that the examination of persons called to act as jurors is limited to such matters as tend to disclose their qualifications in that regard, under the established provisions and rules of law; and hypothetical questions are not competent, when their evident purpose is to have the jurors indicate in advance what their decision will be under a certain state of evidence, or upon a certain state of facts, and thus possibly commit them to certain ideas or views when the case shall be finally submitted to them for their decision.' "

15—Vol. 84.

In the instant case, the following question was propounded to and answered in the affirmative by most, if not all the members of the jury, that convicted Pope.

"In the event you are taken and accepted as a juror in this cause, and the Court should instruct you that where several persons combine together to commit an unlawful act, each is criminally responsible for the act of his associates committed in the furtherance or prosecution of the common object, and if several persons combine to do an unlawful act and in the prosecution of the common object, a culpable homicide results, all are alike criminally responsible for the propable consequence that may arise for the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own, and all are equally criminal. Would you render a verdict of guilty in this case, which would carry with it the death penalty, if you believed from the evidence in the case, to the exclusion and beyond a reasonable douht that the defendant, John H. Pope, had combined with one Frank Rawlins, the co-defendant in this case, to commit a robbery, and that in the prosecution of that robbery, a culpable homicide occurred, and that Mr. Pope was either actually or constructively present aiding and abetting in the commission of that homicide?"

This question is even more objectionable than the question propounded in the Dicks case *supra*, as that embodied only one proposition, and that a simple one; whereas this question is greatly involved, includes propositions of law and of fact, and seeks to embody the essential elements of the crime which it was proposed to establish by the tes-

timony of numerous witnesses, and to that extent, sought to commit the jurors to certain ideas or views, and have them indicate what their verdict would be prior to hearing any of the testimony.

I think it was highly objectionable and reversible error to permit this question to be propounded to the talesmen.

It is true in the Dicks case, the question was asked by the defendant, and in the instant case, by the State Attorney. I mention this, although I fail to see why there should be privileges granted to the State Attorney in the conduct of a criminal trial that are denied to the defendant?

A trained lawyer would not attempt to answer the hypothetical question propounded in the instant case, without carefully studying and considering it, as it includes several propositions of law and of fact, but the jurors were required to and did answer it off-hand, on hearing it read to them.

Since the propriety of such questions is approved by this court, there is nothing now to prevent the State Attorney from putting in the form of a question, matters usually embodied in an opening address as to what he expects to prove, and have the talesmen express their willingness to convict in advance of hearing the testimony. It insures his securing a jury hostile to the defendant, because those who should answer "no," would be challenged for cause.

Apart from the impropriety of such questions, *per se,* the one propounded to the jurors in this case does not correctly state the law. It is not the law that where "several persons combine together to commit an *unlawful act,*" and in the "perpetration of the unlawful act." a culpable homicide is committed, but "without any design to

effect death,'' that the homicide will carry with it the death penalty. The Statute limits such consequences to the perpetrators of ''arson, rape, robbery or burglary.''

The statute further provides that ''the unlawful killing of a human being,'' ''when perpetrated without design to effect death, by a person engaged in the commission of any *felony,* other than arson, rape, robbery, or burglary, it shall be murder in the third degree.''

That part of the hypothetical question purporting to set forth the law governing the offense and the essential elements of the crime, did not even use the word ''felony,'' and the words ''unlawful act'' which occurs in two places, includes misdemeanors of the smallest degree.

After the law had been improperly stated in the hypothetical question, and towards the end of it, the word ''robbery'' is used. That was in relation to the facts, and not as to the law governing the facts. As to that, the law was incorrectly stated. Even if hypothetical questions seeking to ascertain if a jury would convict upon evidence subsequently to be introduced, are proper, the law should be correctly stated, but the question here challenged, did not do. It was highly objectionable and improper in the manner in which it was framed and propounded; and the objection to it should have been sustained.

I will not discuss the other grounds of my dissent; one relates to the character of the testimony. Rawlins, without whose testimony Pope could not have been convicted —had perpetrated a dastardly murder, and his neck was almost in the halter, from which he hoped to extricate him-self by his testimony implicating Pope. That his hope was well founded, subsequent events attest.