267 So.2d 647 (1972)
William FOXWORTH, Petitioner,
v.
STATE of Florida, Respondent.
No. 42012.
Supreme Court of Florida.
September 20, 1972.
Rehearing Denied November 9, 1972.
*648 Thomas C. MacDonald, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for petitioner.
Robert L. Shevin, Atty. Gen. and Raymond L. Marky, Asst. Atty. Gen., for respondent.
*649 ADKINS, Justice.
By mandate of the United States Court of Appeals, Fifth Circuit, we are required to review the conviction of William Foxworth which occurred on December 5, 1944, more than 27 years ago. Habeas corpus is the proper vehicle for a full appellate review under the circumstances here presented.
A writ of habeas corpus has been issued and a return made by the Attorney General.
Petitioner, William Foxworth, hereinafter referred to as "Foxworth," was fourteen years of age at the time of the alleged commission of the crime of murder in the first degree. He and three other teen-age negro defendants (Charles Bevels, Robert Farmer and Floyd Alexander) were charged by indictment with the premeditated murder of Earl Wilson while all were incarcerated in a cell in a correctional institution for young offenders. Foxworth, Bevels and Farmer were represented by a court-appointed attorney, while the remaining defendant, Alexander, had other counsel, seemingly of his selection.
All of the defendants were convicted of murder in the first degree with recommendation of mercy. The conviction was affirmed on motion of the Attorney General by this Court on September 11, 1945. (Bevels et al. v. State, 156 Fla. 159, 23 So.2d 156). There was no brief filed on behalf of Foxworth, nor was the appeal orally argued on the merits.
In February 1964, Foxworth sought post-conviction relief and, upon summary denial of his petition by the Circuit Court, instituted habeas corpus proceeding in this Court. The petition was found to be without merit. Foxworth v. Wainwright, 167 So.2d 868 (Fla. 1964).
On July 22, 1969, Foxworth filed a motion to vacate and set aside judgment and sentence in the Circuit Court of Jackson County, pursuant to Rule 3.850, Florida Rules of Criminal Procedure, 33 F.S.A. This motion was denied and Foxworth appealed to the District Court of Appeal, First District. The order of the trial court was affirmed in Foxworth v. State, 231 So.2d 229 (Fla.App.1st, 1970). A further petition for writ of habeas corpus to this Court was thereafter denied without opinion on July 16, 1970. Foxworth v. Wainwright (Case No. 39,933).
On September 21, 1970, Foxworth filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida. Following response by the Attorney General, and without hearing, the petition was denied on November 19, 1970. Foxworth v. Wainwright, 319 F. Supp. 593. Foxworth then appealed to the Court of Appeals for the Fifth Circuit. Counsel was appointed to represent him, and after oral argument the Court of Appeals filed its opinion in Foxworth v. Wainwright, 449 F.2d 319 (5th Cir.1971), saying, inter alia:
"An appeal was perfected to the Supreme Court of Florida on the perfunctory ground that the trial court erred in denying the defendant's motion for a new trial. Having thus arrived at the threshold of the Supreme Court, Foxworth's counsel there abandoned him. He failed to even file a cursory brief. The case was therefore decided without argument on the merits on the motion of the Attorney General to affirm on the record, one Justice dissenting. Bevels v. State, 1945, 156 Fla. 159, 23 So.2d 156." (p. 319)
"While it is true that Foxworth's appeal was perfected it was not prosecuted. Perfection is a half a loaf only, and here a half a loaf is no better than none."
"* * *
"We conclude on the record that Foxworth is entitled to have a review of his trial and conviction as on an original appeal with counsel, or to be released.
"Because of our disposition of the case we pretermit consideration of the additional *650 contentions of Foxworth that he was denied effective assistance of counsel at trial because of a conflict of interest between Foxworth and his co-defendant Bevels, and that there was a systematic exclusion of negroes from the grand and petit juries. Nevertheless, the record, and what may be judicially noticed, impels us to observe that Foxworth's constitutional arguments are not insubstantial.
"We remand the case to the district court with directions to give the State an opportunity to provide Foxworth with a review of his conviction with the aid of counsel on direct appeal. If Foxworth is not afforded the opportunity to appeal within ninety days after the mandate has been received and filed in the district court, Foxworth shall be released." (p. 320)
These proceedings resulted and we now consider the case in the posture of a direct appeal by Foxworth.
The first question is whether "the conviction of appellant is totally devoid of evidentiary support." Nine boys had been placed in a small cell for running away and had been there for periods ranging from a few days to a few weeks. Foxworth had been there three weeks at the time of the death of the victim. An escape plot was hatched during the week preceding the death of Earl Wilson. A stick, variously likened to a shovel or broom handle, found its way into the cottage to be used in the escape.
The indictment charged that Foxworth, together with Bevels, Farmer and Alexander, murdered Earl Wilson "by striking him with some blunt instrument." A physician testified that Earl Wilson died as a result of a blow upon his head by a blunt instrument. He found no bruise on the neck muscles.
There were eight eyewitnesses to the homicide and they related two separate episodes, a striking of the head of Earl Wilson with the stick by Bevels and a later pressing of the stick against the neck of Earl Wilson, a happening in which Foxworth admittedly was involved. One witness testified that he saw Bevels hit Earl Wilson as Farmer and Alexander were holding Wilson's legs and Foxworth was holding Wilson's hands. This was corroborated by two other witnesses. We agree with the conclusion of the District Judge of the United States District Court when he said:
"The evidence at trial against this petitioner and his co-defendants was weighty since the commission of the crime had been performed in the presence of eye-witnesses who testified against the petitioner and his confederates." 319 F. Supp. 593, 598.
When persons combine to commit unlawful acts, each person is criminally responsible for the acts of his associates. If Foxworth rendered assistance in the commission of the crime, he is equally guilty as a principal in the first degree. See In re Vann, 136 Fla. 113, 186 So. 424 (1939); 6 F.L.P., Criminal Law, § 133, Fla. Stat. (1941) § 776.01. The following appears in Henry v. State, 81 Fla. 763, 89 So. 136 (1921):
"The principle is well established that, when several persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design, and if several persons combine to do an unlawful act, and in prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is their act, as well as his own, and all are equally criminal." (p. 138)
*651 See also Pope v. State, 84 Fla. 428, 94 So. 865 (1923). The evidence was sufficient to sustain the verdict.
Foxworth also says he was denied effective assistance of counsel because his attorney was denied adequate time to prepare for trial, his attorney was appointed to represent codefendants in the cause, and his attorney failed to prosecute the original appeal in this Court in 1945.
A term of court began in Jackson County on the second Monday in November, 1944. Fla. Stat. (1941) § 26.35, F.S.A. The crime was discovered on September 1, 1944, and an indictment returned on November 15, 1944, the attorney was appointed on November 22, 1944 and the case was tried seven days later. The trial lasted one day. The following principles discussed in Roberts v. Dutton, 368 F.2d 465 (5th Cir., 1966), are applicable in considering the nature of Foxworth's trial:
"We take judicial notice that White County, Georgia, is a rural county where indictments are most frequently returned and trials had during fixed sessions of court, where information concerning witnesses and events is more generally known than in large cities, and, accordingly, where the necessary preparation can often be accomplished during court week, as was the case with Bibb County, Alabama, referred to by Mr. Justice Black in Avery v. State of Alabama, 1940, 308 U.S. 444, 450-452, 60 S.Ct. 321, 84 L.Ed. 377. Accordingly, whether Roberts' right to the effective assistance of counsel was denied by the shortness of the time allowed for preparation depends upon the particular circumstances of the case." (p. 470)
A criminal prosecution in 1944 was not as complicated as it is today, as there were no discovery proceedings available to the defendants. No question of search and seizure was involved in the case and there was no confession by any of the defendants. There were numerous eyewitnesses to the offense, all of whom were confined and were easily accessible. It does not appear that Foxworth's attorney was denied adequate time to prepare for trial.
As to the alleged denial of effective assistance of counsel, based upon the fact that Foxworth's attorney also represented joint or codefendants, Foxworth has failed to demonstrate actual prejudice caused thereby. The record shows that Wilson, Washington and Gordon accused Bevels, Farmer, Foxworth and Alexander as the perpetrators of the crime. The latter (including Alexander who was represented by independent counsel) countered with the defense that Wilson, Washington, Gordon and McCall committed the crime and not the defendants who were indicted. In other words, court-appointed counsel, as well as Alexander's independent counsel, applied the basic principle, "United we stand, divided we fall." This was a matter of strategy, concurred in by independently-retained counsel, and it appears that Foxworth's attorney did, in fact, render reasonably effective assistance. We recognize that a heavier burden to show ineffective assistance of counsel would rest on Foxworth in habeas corpus proceedings than upon a direct appeal, and although Foxworth v. Wainwright, 319 F. Supp. 593 (Fla.N.D., 1970) was a proceeding in habeas corpus, the principles enunciated by Judge Middlebrooks are applicable on appellate review. The opinion contains the following:
"The mere representation of codefendants by single court-appointed counsel is not per se a constitutional violation of such dimension as would warrant habeas corpus relief and such practice has been widely accepted in this Circuit and recognized as necessary economy of legal resources. Generally, application for a severance is a matter the granting of which rests within the discretion of the trial court and it must be affirmatively shown that prejudice to petitioner resulted from the failure to grant a severance. *652 Petitioner has provided no showing to this Court that he was prejudiced in being jointly tried with his other co-defendants and having read the transcript on file, this Court finds no prejudice.
"* * *
"Cases in this Circuit challenging the ineffective assistance of counsel are rapidly becoming legion. Following is the gauge by which this Circuit measures the claimed constitutional infraction:
"`The generally accepted standard by which to determine whether a defendant has been denied effective assistance of counsel has been set out in Brown v. Beto, 5 Cir., 1967, 377 F.2d 950, 957-958:
"`"The actual standard of incompetency applied by the overwhelming majority of courts is stated as follows: Incompetency of counsel such as a denial of due process and effective representation of counsel must be such as to make the trial a farce, sham, or a mockery of justice." * * * This court has defined "effective counsel" in terms of a "reasonable counsel" standard: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." McKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592.' King v. Beto, 429 F.2d 221, p. 225, 5th Cir., 1970. See also Odom v. United States, 377 F.2d 853 (5th Cir.1967).
"Even more recently this standard has been explained as follows:
"`* * * In this regard, the standard to be observed is not whether petitioner would have fared better if his counsel had been more experienced, knowledgeable or aggressive, but rather whether the record establishes that he lacked the minimum standards of competence necessary to satisfy petitioner's constitutional right to counsel. Bruce v. United States, 1967, 126 U.S.App.D.C. 336, 379 F.2d 113. The record does not indicate that counsel's alleged ineffectiveness reduced the proceedings to a farce and mockery of justice. * * * Rather, it appears from a reading of the record that despite the short time for preparation counsel for the defense rendered reasonably effective assistance under the circumstances.' Cappetta v. Wainwright, 433 F.2d 1027, p. 1029, 5th Cir., 1970.
"Having studied the transcript and having measured the performance of petitioner's counsel in light of the standard as set forth above, this Court finds and concludes that counsel `rendered reasonably effective assistance'; that the legal services accorded petitioner were not so poor that he did not have the opportunity to present his side of the story; and that counsel's representation of petitioner did not render the trial a `farce or a sham.' Parenthetically it might be added that `the time which counsel spends with an accused is merely one factor to be weighed in evaluating the effectiveness of representation.' O'Neal v. Smith, 431 F.2d 646, p. 648, 5th Cir., 1970. Cappetta, supra. In this regard this Court finds that petitioner was not denied the effective assistance of counsel and concludes that this allegation is without merit." (319 F. Supp. 593, pp. 596-597)
It is interesting to note that in Foxworth v. Wainwright, 167 So.2d 868 (Fla. 1964), Foxworth claimed
"[T]hat he was without the assistance of counsel at his arraignment; that he had no counsel to assist him on appeal from the murder conviction; that the true bill found by the grand jury lacked the signature of the foreman; that his commitment papers were signed by a deputy *653 clerk, rather than by the trial judge or clerk of the court, and that he was a minor at the time of his conviction." (p. 870)
This Court disposed of his petition with this comment:
"The records of this Court reveal the unsoundness of these contentions." (p. 870)
Viewing this record in the light of the standards applicable to a claim of incompetency of counsel, Foxworth has failed to demonstrate the allegations of ineffectiveness of counsel.
The failure of Foxworth's attorney to file a brief and prosecute the original appeal in this Court in 1945 has no bearing upon the effectiveness of counsel during the course of the trial. This omission on appeal is cured by the granting of this review by the Court. In other words, this appellate review cures any error resulting from the failure of Foxworth's attorney to prosecute the original appeal.
Foxworth next contends there was a systematic exclusion of negroes from the grand and petit juries in question. In discussing this contention, Judge Middlebrooks in Foxworth v. Wainwright, supra, said:
"Finally, it has been uniformly held in this Circuit that one may not collaterally attack the composition of the grand and petit juries without first having objected to same at the time of trial. Hayes v. Wainwright, supra; Perez v. United States, 303 F.2d 441 (5th Cir.1962); Bustillo v. United States, 421 F.2d 131 (5th Cir.1970). The record of the trial proceedings affirmatively discloses that no objections were ever voiced as to the composition of the grand and petit juries and that, therefore, under the law collateral attack would not be the proper remedy here. Thus, this ground is also without merit." 319 F. Supp. 593, 596 (Fla.N.D., 1970)
This Court in State v. Silva, 259 So.2d 153 (Fla. 1972), held that it was unconstitutional in the selection of jury panels to employ a quota system to either exclude or include a certain fixed percentage of black citizens of the county who are registered voters. This decision followed Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950), and Shepherd v. State, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951). This Court said:
"The tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, however, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community, for such complete representation would frequently be impossible. But it does mean that prosecutive jurors must be selected at random by the proper selecting officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. See Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1945). Selection from classes or groups on a proportion basis guarantees representation, but at the same time places a limitation on the number from each class or group. This is forbidden." State v. Silva, 259 So.2d 153, 160.
It necessarily follows that the mere showing of a certain percentage of eligible negro jurors is insufficient to show that the particular jury panel was improperly selected. Such a showing may be considered in determining whether a systematic and intentional exclusion existed, but this is by no means conclusive.
The jury panel of Jackson County was attacked in Hayes v. Wainwright, 302 F. *654 Supp. 716 (Fla.N.D., 1969). Hayes was convicted in 1942 of a capital offense and the Federal District Court held there was no systematic exclusion of negroes from jury panels in the Jackson County Circuit Court in 1942. The case sub judice was tried in 1944.
Foxworth relies upon a statement in Hayes v. Wainwright, supra, from the minutes of the Circuit Court, to the effect that it appeared the grand jury was called from the voter registration list in open court. He then relies upon a comparative analysis of the population of whites and negroes and the registration of democrats and republicans. Foxworth says that membership in the democrat party in 1944 was restricted to persons of the white race; that the jury panel was taken from the list of registered voters; that in 1944 there were 12,010 democrats and 200 republicans registered to vote in Jackson County; that the registered voters' list from which jurors were taken was not less than 94.4% white and not more than 1.6% negro. He points out that the population percentages in 1940 were 64% white and 36% negro, and in 1950, 66.7% and 33.3%, respectively.
The fallacy in this argument is the assumption that the jury list was limited to the list of registered voters. It is fundamental that every officer is presumed to perform his duty in accordance with law.
Fla. Stat. (1941) § 40.01, F.S.A., required that jurors be taken from the male persons over the age of 21 years who are citizens of this State and who have resided in this State for one year and in their respective counties for six months. Fla. Stat. (1941) § 40.02, F.S.A., required that the county commissioners shall select the jury list and describes the procedure. No reference to the voters' registration list is made in the statute.
In order to reverse, we would be required to surmise that the county commissioners of Jackson County, Florida, in 1944, limited the selection of the prospective jurors to the voter registration list, and, further, that no negroes were on the jury panel. The burden is upon Foxworth to show a systematic and intentional exclusion of negroes and to further show that the jurors were not selected at random. This he has failed to do.
Also, of paramount importance is the fact that no objection to the jury panel appears to have been made.
Fla. Stat. (1941) § 913.01, F.S.A., required that a challenge to the panel must be made and decided "before any individual juror is examined, unless ordered by the court." By virtue of the terms of this statute, the failure to object constituted a waiver.
Foxworth says, however, that he was saddled with court-appointed counsel and should not be bound by this principle of law. Further, he says, the failure to challenge the panel is further evidence of incompetency of counsel.
It should be noted that in all of his previous efforts for post-conviction relief Foxworth never questioned the legality of the jury panel. So, we have a waiver not only by court-appointed counsel but also by the defendant himself, who has consistently and diligently pursued every remedy in criminal procedure.
When we consider the question of waiver by court-appointed counsel, it is interesting to note the decision of the United States Circuit Court of Appeal, Fifth Circuit, in Bustillo v. United States, 421 F.2d 131 (1970). Bustillo was indicted by a grand jury and represented by court-appointed counsel. Upon a plea of guilty he received a sentence of 15 years. Then Bustillo moved to vacate his sentence claiming that the grand jury which indicted him was defectively constituted. The trial court denied the motion and, in affirming this order, the United States Circuit Court of Appeal said:
"Rule 12(b)(2) provides that a defect in the indictment must be objected to by *655 motion before trial and that failure to object at that time waives such a defense. Bustillo did not object before trial, or at any other time during the proceeding on the merits, to the composition of the grand jury which indicted him. His failure to do so constituted a waiver so that he may not now for the first time assert such an objection." (p. 132)
Just as in Bustillo v. United States, supra, the failure of Foxworth to make an objection constituted a waiver and he may not now for the first time assert such an objection.
Foxworth finally says that when all of the points he has raised are considered collectively they establish that a conviction was rendered without the essential ingredients of fairness. The locality and the time of this particular trial should raise no presumption of illegality or unfairness. The enlightened progress of the judicial system in safeguarding the rights of defendants raises no presumption that all trials in the past were illegal. Whether Foxworth's trial is gauged by ancient or modern standards, his conviction of murder in the first degree, with a recommendation of mercy, was justified. Foxworth received a fair and impartial trial in accordance with the law as it existed in 1944.
We find no reversible error and the judgment of the lower court is affirmed. The writ of habeas corpus is accordingly discharged.
It is so ordered.
ROBERTS, C.J., ERVIN, BOYD, McCAIN, and DEKLE, JJ., and MASON, Circuit Judge, concur.