246 So.2d 566 (1971)
STATE of Florida, Petitioner,
v.
Arthur Lee ROBY, Respondent.
No. 39434.
Supreme Court of Florida.
March 10, 1971.
Rehearing Denied April 26, 1971.
*567 Robert L. Shevin, Atty. Gen., and Michael N. Kavouklis, Asst. Atty. Gen., for petitioner.
John W. Boult, of Fowler, White, Gillen, Hunkey & Kinney, Tampa, for respondent.
HODGES, Circuit Judge.
The decision in the case of Roby v. State of Florida, 229 So.2d 604, is reviewed here on certiorari to the Second District Court of Appeal, pursuant to Article V, Section 4, of the Florida Constitution, F.S.A., and Rule 4.5(c) of the Florida Appellate Rules, 32 F.S.A.
The respondent, Arthur Lee Roby, and two other defendants, William Henry Johnson, Jr., and Ernest Williams, were jointly charged with the substantive crime of 1st degree murder of one Frank Cutler, deceased, the indictment alleging in the usual language that the three defendants unlawfully effected the death of the victim by shooting him with a pistol.
At the conclusion of a trial lasting five days, the jury acquitted the defendant Johnson, but returned verdicts of guilty of murder in the 2nd degree against the defendant, Ernest Williams, and the respondent, Arthur Lee Roby. After entry of judgment of conviction, both defendants were sentenced by the trial court to be confined at hard labor for twenty years.
The trial court's judgment of conviction of the respondent Roby was reversed on appeal by the District Court's cited opinion, which certiorari lays open to legal scrutiny to determine whether or not it conflicts with decisive law as enunciated in reported opinions of the Supreme Court or other District Courts of Appeal.
From the Court's review of the entire record in the case, permitted in such proceedings, James v. Keene, Fla., 133 So.2d 297, we believe that the facts, as stated in the decision which is the subject of our judicial inquiry, perhaps sufficiently present the legal issues upon which our conclusions hinge. However, for reference accommodation and immediate perspective relief of the legal questions presented, we shall briefly restate the pertinent facts as we *568 have gleaned them from the extremely lengthy transcript of evidence, much of which was understandably befuddled and confused because of the nature of the melee out of which the killing took place and which was made more nebulous because the actions of those involved in the tumult were so rash, precipitative and intermingled and their sequence of such rapidity that it is impossible to completely separate and narrate them as to exact time or location in the barroom.
The evidence does reveal that in Tampa, Florida, at 1024 Central Avenue, there was located a drinking establishment known as the Pyramid Lounge, comprised of a rectangular room running east and west of about 20' x 75' and divided into an east side area, containing about nine tables with chairs, known as the "Ace Lounge", and a west side portion, where a semi-circular bar and stools were situate, called the "Pyramid Bar". Back to back open booths ran the entire length of the room on the north side.
On the evening of February 4, 1968, somewhere near 11:30 P.M., the three named defendants and one Robbie Marva Robinson, who had entered the spot with them at about 9:30 P.M., were in the "Pyramid Bar" area of the establishment seated at a booth.
The place was crowded with patrons and noisy.
One James L. Hogan, 19, came into the room with one Margaret Hunt and a person named Romae Lee Rucker, and this trio had gone to the "Ace Lounge" portion of the premises near the bar. An argument ensued between Hogan and the said Robbie Robinson, who had come over to the vicinity of Hogan and his companions and accused Hogan of referring to her as a member of the demimonde, but not in those exact words. The defendant, William Henry Johnson, Jr., following Robinson, loudly reaffirmed the accusation against Hogan and attempted to hit Hogan but the blow was deflected by Rucker. At this point the decedent, Frank Cutler, interjected himself into the argument and for a fleeting moment, at least, restrained Johnson and Hogan from becoming unalterably involved in that altercation by taking Hogan with him toward the eastern portion of the "Pyramid Bar".
The smoldering residuals of this noisy wrangle swiftly drifted to that part of the establishment now occupied by Hogan and Cutler and broke out into a new fiery fracas between Johnson and Hogan, as the former angrily and persistently voiced his resentment to the alleged slur on Robbie Robinson, whom he claimed to be his sister. This confrontation became the incipient cause of the tragedy in this case as the respondent Roby and the doomed Cutler, again interceding for his close friend Hogan, almost immediately became antagonistic participants in a violent dispute which deteriorated at once into physical combat, it not being clear who struck the first blow.
The final struggle carried the combatants a short distance toward the rear of the barroom to a point a few feet farther east of the bar. The defendant Williams followed in close pursuit and William Henry Johnson, Jr., also maneuvered in toward the center of the fury.
After stating at one point to Cutler that he would kill him, the respondent Roby began firing his .25 caliber pistol at Cutler at the same time that codefendant Williams was shooting at the victim with his .22 caliber pistol. There was testimony that the defendant Johnson also discharged his .22 caliber pistol in the direction of Cutler.
Cutler slumped and fell mortally wounded with two slugs in his abdomen, after stating, according to witnesses, "It doesn't make sense", his terminal utterance on earth. Some witnesses, including Roby, stated that Cutler held a chair raised over his head in a threatening manner when, or shortly before, the pistols began to bark, and testimony was also admitted that he was a mean and dangerous man, having *569 once broken a man's back by kicking him in a fight in front of the Pyramid Lounge.
A rather enthusiastic general exodus from the building followed the shooting. Near the lead of the evacuation was a group composed of the three armed defendants and the one whose remonstrance at indignity had lighted the explosion fuse to begin with, Robbie Robinson. She had been in the rest room at the time of the actual shooting, but said at the trial in describing her withdrawal with the defendants: "We all run automatically together." She further testified at the trial as follows:
"Well, Roby wanted to keep saying that he had shot the boy, and they wanted to keep telling him not to say that until he found out what was going on, and they say with all that shooting in there any one of them could have done it."
And she reiterated later, upon questioning, that both Johnson and Williams had said that any one of the three defendants could have shot Cutler.
When cross-examined at the trial, respondent Roby said:
"I told Robbie Robinson I thought I had shot at him. I shot a boy in the bar."
Immediately thereafter and at all times since, he has been emphatic in stating that he shot "at" the deceased rather than that he shot him in fact. No witness testified that a projectile from Roby's weapon hit Cutler.
The autopsy report revealed that two slugs were found in the victim's body and a pathologist testified that the cause of death was the combined effect of two gunshot wounds in the abdomen.
Only one .22 caliber slug was placed in evidence. Another slug of disputed caliber was allegedly taken from Cutler's body but this slug and testimony relating to it were not admitted.
At the conclusion of the testimony, the trial court refused to submit to the jury, orally or in written form, the following instruction requested by the State and to which the respondent objected:
"When two or more persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design; and if two or more persons combine to do an unlawful act, and in the prosecution of the common object; an unlawful homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish; the immediate injury from which death ensues is considered as proceeding from all who are present aiding and abetting the injury done, and the actual perpetrator is considered as the agent of his associates. His act is theirs as well as his own and all are equally guilty."
The trial court, counsel for the State and defense counsel had engaged in some discussion relative to a "conspiracy charge", but obviously the Court was referring to the quoted aiding and abetting charge which was declined.
The District Court of Appeal concluded, in a divisive opinion of two to one, that the evidence was inadequate to support a valid finding on the substantive charge that the respondent Roby caused the death of the deceased. It also held that the failure of the trial court to instruct the jury as to provisions of Section 776.011, Florida Statutes, F.S.A., which makes a person a principal in the first degree whether he actually commits the crime or is present aiding, abetting, counseling, hiring or otherwise procuring such offense to be committed, rendered the verdict invalid on this theory.
The Court also further decided that the refusal to grant the quoted instruction, as requested by the State and objected to by *570 the respondent, was plainly within the discretion of the trial judge, since it was not clear whether the case dealt with "conspiracy" or "aiding and abetting".
The contention here of the petitioner, State of Florida, based upon conflict of decision, has a dual aspect.
First, it is urged that the evidence at the trial was, indeed, sufficient to support the verdict of the jury on the substantive charge against Roby, under the decision of this Court, and Second, that in any event, respondent's conviction should be sustained, under Section 776.011, Florida Statutes [F.S.A.], because the evidence plainly shows that he was present, aiding and abetting the commission of the offense and that a jury instruction on aiding and abetting was not necessary to sustain the conviction under the controlling reported case law of this court as well as that of other district courts of appeal.
While the question involved in the first point may appear to be a close one, in view of the respondent's own quoted statements immediately after the shooting and at the trial, we are convinced that the District Court of Appeal was correct in that portion of its decision which held that the facts proved at the trial were legally insufficient to support conviction on the substantive charge. In our opinion, no conflict exists between their decision on this point and the decisions of this Court or any other District Appellate Court on this question.
The proof, under the evidence admitted, was that two gunshot wounds caused the death of Cutler; that a total of between two and seven shots were fired by the three defendants at Cutler; that only one .22 caliber slug from the pistol of defendant Williams was taken from Cutler's body; and that no one saw a projectile from Roby's gun hit Cutler. It is obvious that one reasonable hypothesis, based upon these facts, is that no projectile from respondent Roby's pistol found its mark. This places a finding that Roby's action directly caused the homicide in the realm of speculation and suspicion which, however strong, is never sufficient to nullify a reasonable doubt and support a criminal conviction. The burden of proof of connecting the death to Roby's pistol was not met. Driggers v. State, Fla., 164 So.2d 200; Davis v. State, Fla., 90 So.2d 629.
The authorities cited by respondent, including Land v. State, Fla., 156 So.2d 8; Coachman v. State, Fla.App., 114 So.2d 189; Hopper v. State, Fla., 54 So.2d 165; Tongay v. State, Fla., 79 So.2d 673; and Bellamy v. State, 56 Fla. 43, 47 So. 868, are distinguishable, as to factual complex, from the case under consideration, and because of the distinctions are not controlling.
We must depart from the ruling of the District Court, however, on the second contention of the petitioner because it is incompatible with the decisions of this Court and other Appellate Courts of this State.
Abundant proof that the respondent Roby was present aiding and abetting in the commission of the offense was adduced at the trial. The evidence was fully sufficient, as a matter of law, to sustain such a charge, and it is now well established in Florida that a person who is charged in an indictment or information with commission of a crime may be convicted upon proof that he aided or abetted in the commission of such crime, under Section 776.011, Florida Statutes, F.S.A., which enacted the recognized precept into statutory law.
The rule was first recognized, albeit, perhaps, in obiter dictum, by this Court in the year 1893 in Albritton v. State, 32 Fla. 358, 13 So. 955. It was followed in many other decisions, among them, Green v. State, 40 Fla. 191, 23 So. 851 (1898); Myers v. State, 43 Fla. 500, 31 So. 275; Pope v. State, 84 Fla. 428, 94 So. 865; Brown v. State, 82 Fla. 306, 89 So. 873; *571 Jimenez v. State, 158 Fla. 719, 30 So.2d 292; Chaudoin v. State, Fla.App., 118 So.2d 569 and Newman v. State (Fla.) 196 So.2d 897 (See also Sons v. State, Fla. App., 99 So.2d 888, cert. den. 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160), to finally establish it as law in the criminal jurisprudence of Florida.
In Jacobs v. State, 184 So.2d 711, it was held by the First District Court of Appeal that one may be charged with aiding, abetting or procuring the commission of a criminal offense and may be convicted upon proof establishing the actual commission of the offense by him, and vice versa.
In that case the defendant, who was charged with a substantive offense, conceded that the aiding and abetting statute (F.S. Sec. 776.011, F.S.A.) makes an aider and abetter a principal equally guilty as the person who actually perpetrates the crime but contended that the State had the duty of charging him as an aider and abetter in the information filed against him, concluding that he could not be found guilty of aiding and abetting on the substantive charge contained in the information. His contention, of course, was based upon the general rule that a defendant is entitled to have the charge against him proved substantially as alleged in the indictment or information and cannot be prosecuted for one offense and convicted and sentenced for another.
In clearly rejecting this contention and affirming the judgment of conviction, the Court, in Jacobs, quoting from the Albritton case, said:
"* * * Under the indictment before us, charging Andrew Albritton with the commission of the felony, and Henry Albritton as being present, aiding, abetting, and procuring the commission of the offense, both of them could have been convicted on a state of facts showing that Henry committed the offense, and Andrew was present, aiding, abetting, and procuring the commission thereof. The offense charged against all of them is the same. * * * Under this indictment, * * * the named defendants are indicted as principals,  Andrew in the first degree, and Henry * * * in the second degree. * * * The punishment prescribed for principals in the first and second degrees is the same under our law."
The Court then stated:
"One may be charged in an information or indictment with aiding, abetting, or procuring the commission of a criminal offense, but if the proof establishes that he actually committed the offense, a verdict finding him guilty as charged will be sustained. Conversely, it would follow that if an information, such as the one filed in the case sub judice, charges a defendant with the commission of a criminal offense, and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." (Italicizing ours)
Under our statute, therefore, a person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute. See Myers v. State, 43 Fla. 500, 31 So. 275; Pope v. State, 84 Fla. 428, 94 So. 865.
The underlying reason, to which the rule, as enunciated in the cited cases from Albritton to the present time, is obviously pegged, is that the provisions of the statute, proscribing acts of aiding, abetting, counseling, hiring and procuring of criminal offenses, must be read into the formal charges against persons accused of crime, and that they coalesce with and become a *572 part of the indictment or information alleging substantive offenses.
The majority opinion of the District Court of Appeal demonstrates some confusion in its statement relative to "conspiracy", probably induced by its mention by the trial court and counsel in connection with jury instructions.
It appears to be crystal clear that the substantive crime of conspiracy, an offense entirely separate and distinct, and governed by a different statute, from the substantive crime with which the respondent Roby was charged, has no relevancy in this case. Blackburn v. State, Fla., 83 So.2d 694, cert. denied, 350 U.S. 987, 76 S.Ct. 473, 100 L.Ed. 854.
We believe it is also free from doubt that the instruction requested by the State, although not as artfully or precisely drawn as it might have been, nevertheless embraced a proper statement of the law bearing upon the facts of the case.
The learned trial judge's refusal to give the instruction, upon objection of the respondent, while erroneous insofar as the State was concerned, was not reversible error as to the respondent Roby, who could only benefit by its absence. The minority opinion of the District Court of Appeal, we think, was eminently correct on this phase of the case.
In view of the foregoing, the decision of the District Court of Appeal is quashed and the judgment and sentence of the trial court reinstated.
ROBERTS, C.J., and ERVIN and DREW (Retired), JJ., concur.
CARLTON, J., dissents.