970 So.2d 923 (2008)
Michael HODGE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2428.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*924 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
In appealing his conviction for first-degree murder, appellant makes two primary contentions. First, the trial court erred in denying his motion for judgment of acquittal on his guilt as a principal, because the state proved only that he was the actual shooter of the victim. Because the evidence also supported the appellant's participation in the robbery, and the defense itself sought to suggest to the jury that his confession on which the state relied was false, the trial court correctly denied the motion. Second, he claims that the trial court erred by refusing to read to the jury section 985.207(2), Florida Statutes (2005), requiring parental notification when a juvenile has been taken into custody. Although lack of notification of a parent is relevant to the voluntariness of a juvenile's confession, the requested instruction on statutory compliance did not address that issue. The trial court did not err in denying the request. We affirm.
The appellant, Michael Hodge (age 13), and four friends  Michael Johnson (17), Terrence Bell (15), Eric Wilson (14), and Mendez Wilson (13)  were indicted for first-degree felony murder of Adam Beltran, attempted robbery with a deadly weapon, and conspiracy to commit robbery with a deadly weapon. Beltran was shot behind the convenience store where he worked.
Rick Morales was in the restaurant and heard the victim yell. He turned around to see Beltran lying at the door with blood on his shirt and a knife in his hand. Morales ran out but did not see anyone outside.
A witness across the street from the restaurant heard four gun shots and then saw three boys run up the street and two run east behind his shop. He was not asked to, and did not, identify Hodge as one of the people he saw fleeing. Officers arrived shortly thereafter, discovering Beltran dead. Evidence from the scene included a bullet from a .32 caliber gun in a canister of cooking grease. A similar bullet was retrieved from Beltran's chest by the medical examiner.
According to the lead detective, Detective Campbell, word of the shooting spread "like wildfire," and people began coming forward with information. As the investigation progressed, the detectives focused on an apartment complex about two blocks from the store. Both Johnson and Hodge lived in those apartments. Johnson, the oldest of those indicted, had felony warrants outstanding at the time of the shooting.
Detective Streeter testified that he received a call from one of his sergeants *925 telling him that the suspects planned to turn themselves in and would be brought to the station by their parents. Streeter said that a car pulled up to the station with two women in the front and two young black men in the back. Johnson sat behind the driver and Hodge sat behind the passenger. In attempting to ascertain the identity of the two women, Streeter spoke to the passenger in the front seat who identified herself as Hodge's mother. Both women hugged and kissed both children and then left. Streeter admitted that he did not otherwise know the identity of Hodge's mother, and none of the detectives made any further attempt to contact Hodge's parents, believing that the parents had brought their sons in to the police station. Streeter could not identify Hodge's mother at trial but said he had only a couple of minutes to view her at the police station. Hodge's mother did not testify at trial.
Streeter brought both young men to the detective bureau where they were questioned. Johnson was uncooperative in the interview. After receiving his Miranda rights, Hodge confessed to the murder, and officers videotaped his statement, which was played to the jury.
Hodge explained that he, Bell, Wilson, Johnson, and Wilson spent the morning at Evolino apartments. At some point the boys decided to go "amigo hunting," i.e., to rob a Hispanic individual. Before the incident, all five of them decided to split the proceeds. As the group walked down the street, Eric Wilson spotted Beltran cutting boxes with a knife behind the convenience store and suggested they rob him because he had only one arm. Johnson and Bell waited across the street at a bench while Mendez Wilson, Eric Wilson, and Hodge approached the victim.
Hodge brought along a .32 caliber revolver, because the plan was to either fire shots in the air, or show Beltran the gun, to force the victim to turn over his money. At first, Hodge suggested he shot the victim in self-defense by saying "he say he's going to kill me . . . and he pulled out the knife . . . then I shot him, two times." Because the police stressed that Beltran could not have pulled the knife since he was already cutting boxes with it, Hodge revised his statement saying Beltran "came close with the knife . . . with a mean face." Hodge also told the detectives that Beltran commented, "[Y]ou dumb [expletive], you should be in school . . . [t]o get a job." Hodge became angry and fired two shots at Beltran in response to this comment.
Hodge told the officers he shot the victim twice in the torso or chest. He also estimated that he stood a few feet from Beltran when the shots were fired. Hodge remembered looking at the weapon and seeing four bullets and two empty shells. In other words, he shot the gun only twice.
Explaining the events right after the shooting, Hodge stated that Wilson, Bell, and Wilson ran in one direction while he and Johnson ran in another. Hodge said he looked back over his shoulder to see Beltran fall down. Hodge told the police that as he fled the scene he ran past a young man called "Miami" and gave him the gun. At times during the interview Hodge changed his explanation and seemed quite vague about some details. Through viewing the videotape, the jury was able to observe Hodge's demeanor during the interrogation.
The police asked Hodge several questions about Johnson's role in the incident, as well as that of the other boys involved. Hodge denied that Johnson had pressured him to take responsibility for shooting the victim and minimized Johnson's role. Hodge said that Johnson knew they were going to ask the victim for money but did *926 not know that Hodge planned to use the gun to accomplish this. Furthermore, he stated that Johnson was across the street on a park bench while the attempted robbery and shooting took place.
The state rested, and Hodge's attorney moved for a judgment of acquittal as to the alternative theory that Hodge may have acted as a principal, because the state's only evidence  Hodge's confession  showed that Hodge was the actual shooter. Since no one else shot the victim, Hodge could be only the shooter. The attorney asserted that the state should be required to choose a theory  principal or shooter  and should not be allowed to submit both theories to the jury.
The court denied the motion explaining that the state was allowed to assert alternative theories "because the jury can believe or disbelieve part or all of appellant's statement." Where there were multiple participants to the robbery, the court thought that the jury should be free to determine the issue of who pulled the trigger. The court was mindful that the defense might argue that Hodge falsely confessed to cover for one of the other participants in the crime. As there was sufficient evidence that Hodge participated in the robbery, which his attorney conceded, Hodge could be found liable for felony murder whether he was the shooter or someone else shot the victim.
Sure enough, in closing Hodge's attorney argued that Hodge had falsely confessed, although he admitted Hodge was present at the robbery. To show that his confession was false, counsel noted the discrepancies between Hodge's confession and the facts of the crime. First, Hodge said he fired only two shots, while the witness across the street heard four. Second, Hodge told the detectives he fired two shots into the victim's chest, while the evidence showed only one shot into the chest and one into the lower abdomen of the victim. Third, the medical examiner stated that the gun was fired from at least twelve to eighteen inches away from the victim, while Hodge testified that he held the gun right up to him. The attorney also pointed to other facts within the confession which were inconsistent or which Hodge contradicted in later parts of the confession. The attorney maintained that Hodge was lying to protect Johnson who was older and already had felony warrants out for his arrest.
This line of reasoning appears to have convinced the jury that Hodge's confession that he shot the victim was untrue, as the jury found Hodge guilty of first-degree felony murder as a principal, but not as the shooter; attempt to commit robbery; and conspiracy to commit robbery. Pursuant to an interrogatory on the verdict form, the jury found that Hodge did not carry a firearm, deadly weapon, or weapon during the course of committing or attempting to commit the crime. The judge sentenced Hodge to life imprisonment for felony murder, five years for attempted robbery, and five years for conspiracy to run consecutively. This appeal follows.
I. Judgment of Acquittal
Hodge argues that the trial court erred in denying his motion for a partial judgment of acquittal, because the evidence that Hodge was a principal to first-degree felony murder and attempted robbery was insufficient to submit the issue to the jury. The party moving for a judgment of acquittal admits "the facts in evidence . . . [and] every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence." Parker v. State, 795 So.2d 1096, 1097 (Fla. 4th DCA 2001). "A trial court should not grant a motion for judgment of acquittal unless, when viewed in the light most favorable *927 to the state, the evidence does not establish a prima facie case of the defendant's guilt." Id. at 1098. On appeal, a trial court's ruling on a motion for judgment of acquittal is subject to de novo review. Davis v. State, 918 So.2d 379, 381 (Fla. 4th DCA 2005) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)).
Section 782.04(1)(a)2, Florida Statutes, defines felony murder as "[t]he unlawful killing of a human being . . . [w]hen committed by a person engaged in the perpetration of, or in the attempt to perpetrate" one of the felonies enumerated in the statute, which includes robbery. Section 777.011 provides for the culpability of principals to a felony:
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such. . . .
The statutory language makes clear that both the actor and the aider and abettor are principals in the crime. See Chaudoin v. State, 362 So.2d 398, 401 (Fla. 2d DCA 1978). As noted in State v. Roby, 246 So.2d 566, 571 (Fla.1971):
Under our statute, therefore, a person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.
Accordingly, "the felony murder rule and the law of principals combine to make a felon liable for the acts of a co-felon." Beachy v. State, 837 So.2d 1152, 1152 (Fla. 1st DCA 2003).
That the state presented a prima facie case that Hodge participated in the attempted robbery of Beltran is unquestioned, and his attorney did not move for a judgment of acquittal on the attempted robbery charge. The focus in a felony murder charge is not on the accused's participation in the murder but in the underlying felony. See id.; Michelson v. State, 805 So.2d 983, 986 (Fla. 4th DCA 2001) (Gross, J., concurring specially). Because the victim was killed during the robbery in which Hodge participated, it matters not whether Hodge was the perpetrator of the shooting or merely participated in the robbery. In either event he would be guilty of felony murder. See Roby, 246 So.2d at 571.
The state was entitled to pursue its case on either theory, even though Hodge "confessed" to being the shooter. The jury is instructed that: "A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness." Fla. Std. Jury Inst. (Crim.) 3.9. So long as the state presented evidence of multiple participants in the underlying felony, we think it was entitled to have the jury instructed that it could find Hodge guilty either if he was the actual shooter or if one of the other participants was the actual shooter but Hodge participated in the attempted robbery.
Moreover, that Hodge may not have been the shooter was amply demonstrated by the defense's argument that Hodge did not have all the details correct in his "confession," details that the actual shooter may have known. The jury was also able to watch Hodge's demeanor during his confession to determine whether he was telling the truth. For these reasons, we *928 conclude that no error was shown in denying the motion for judgment of acquittal.
II. Jury Instruction
The defense requested a special jury instruction on "[t]he statute dealing with juveniles and law enforcement is supposed to attempt to reach their parents." The attorney did not know the statute number, and the court was not familiar with it. The state attorney and the court suggested that the requirement may be case-made law. Nevertheless, the attorney requested a "standard instruction" on the statute, requesting that it be read, if such a statute existed. If the attorney could not find a statute, he requested a jury instruction "[t]hat prior to interrogating a juvenile concerning their involvement in a crime, law enforcement must make every reasonable attempt to contact the juvenile's parents prior to making  prior to initiating the interrogation."
The court denied the requested instruction for two reasons. First, it maintained that the issue went to the admissibility of the confession, not its voluntariness, similar to Miranda warnings, and thus was a threshold issue, not one for the jury. Second, the law was intended for the benefit of the parents in knowing their child's whereabouts, not as a right of parents to be present when the interrogation of a child is conducted. Deferring to the court's ruling, the attorney noted that he had not been able to find case law to support his position. Although the court did not charge the jury until the following day, the attorney did not provide the court with the statute setting forth the duties of a person taking custody of a juvenile.
The statute in question, which defense counsel did not cite to the court, is section 985.207(2), Florida Statutes (2005). It provides:
When a child is taken into custody as provided in this section, the person taking the child into custody shall attempt to notify the parent, guardian, or legal custodian of the child. The person taking the child into custody shall continue such attempt until the parent, guardian, or legal custodian of the child is notified or the child is delivered to a juvenile probation officer pursuant to s. 985.21, whichever occurs first. If the child is delivered to a juvenile probation officer before the parent, guardian, or legal custodian is notified, the juvenile probation officer shall continue the attempt to notify until the parent, guardian, or legal custodian of the child is notified. Following notification, the parent or guardian must provide identifying information, including name, address, date of birth, social security number, and driver's license number or identification card number of the parent or guardian to the person taking the child into custody or the juvenile probation officer.
The supreme court determined that the legislative purpose of a prior version of statute "is simply to advise the child's parents or custodians that the child has been detained or placed in shelter care." Doerr v. State, 383 So.2d 905, 907 (Fla. 1980). This is consistent with the trial court's ruling.
Doerr also held that the statute does not render a confession obtained without parental notification automatically inadmissible. Although the statute requires the police to notify the parents, it does not prohibit the police from interrogating the child before notification is accomplished. Brookins v. State, 704 So.2d 576, 578 (Fla. 1st DCA 1997). See also Padmore v. State, 743 So.2d 1203 (Fla. 4th DCA 1999).
Even where the police make no effort to contact the parents, we have held a juvenile's confession admissible. In Brancaccio *929 v. State, 773 So.2d 582 (Fla. 4th DCA 2000), police did not notify a juvenile's parents of his custody until after they obtained his confession. When the juvenile inquired as to his parents' notification, the police merely told him that "it's being taken care of." Id. at 584. He did not ask to suspend interrogation until they were present. We noted, "The issue as to whether police have complied with the parental notification statute was a legal question for the court in deciding whether to permit the confession to be adduced as evidence before the jury." Id. (footnote omitted).
Whether a juvenile's confession is voluntary requires an analysis of the totality of the circumstances. Id. Relying on Ramirez v. State, 739 So.2d 568, 575-78 (Fla.1999), we enumerated the relevant considerations:
(a) the manner in which the police administered Miranda rights, (b) the juvenile's age, experience, education, background and intelligence, (c) whether the juvenile had an opportunity to speak with his/her parents before confessing, and (d) whether the juvenile executed a written waiver of the Miranda rights prior to making the confession.
Brancaccio, 773 So.2d at 583-84 (emphasis supplied). As the supreme court explained in Doerr, "Lack of notification of a child's parents is a factor which the court may consider in determining the voluntariness of any child's confession. . . ." 383 So.2d at 908.
The instruction requested by the defense did not focus on the juvenile's opportunity to consult with his parents but on the conduct of the officers. This was not a correct statement of the issues a jury should consider in determining voluntariness. The trial court did not err in refusing to instruct the jury in accordance with the defense's request.
The court did not prevent the defense and state from arguing the issue of parental notification to the jury. In fact, the state and defense both told the jury of the obligation of the police to notify the parents. The state contended that when Hodge came to the station for questioning with a woman claiming to be his mother, the officers thought that his parent knew where he was and the purpose of his trip to the station. The defense argued that the officer could not identify the woman as Hodge's mother.
In any event, the defense did not actually contest the voluntariness of the statement. Instead, the defense attorney contended that it was a false confession made with the intent to deflect the focus on Johnson. That does not constitute an involuntary confession.
The last issue raised involves a claim of the admission of hearsay. We conclude, however, that the evidence to which the defense objected constitutes an exception to the hearsay rule, because it was not admitted for the truth of the statement.
For the foregoing reasons, we affirm the conviction and sentence.
KLEIN and GROSS, JJ., concur.