# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-1916
_____

STATE OF FLORIDA,

　　Appellant,

　　v.

LUIS ANTONIO PEREZ FRANCO,

　　Appellee.

_____

On appeal from the Circuit Court for Levy County.
Peter K. Sieg, Judge.


March 11, 2026

PER CURIAM.

In a criminal case, only where there is not sufficient evidence to support a jury finding of the defendant's guilt is it appropriate for the trial court to override the jury and enter an order granting the defendant's motion for judgment of acquittal. In the alternative, should the trial court find the evidence presented at trial established a lesser-included offense than what the jury found, it also has the power to adjudicate the defendant guilty of the lesser offense. In all other circumstances, it is the jury's province as factfinder to decide whether the evidence shows the defendant's guilt, not the prerogative of the court.

*Facts*

The State charged co-defendants, Luis Antonio Perez Carraquillo (the father) and Luis Antonio Perez Franco (the son), with two counts of attempted first-degree murder under sections 782.04(1)(a)1. and 777.04(1), Florida Statutes, for their actions against Shane Carnes and Robert Carter, Jr. The State alleged that during the commission of the offense, the father discharged a firearm, and the son possessed a firearm, different criminal enhancements under section 775.087(2)(a), Florida Statutes. They were jointly tried. This appeal concerns only the son.

As this case concerns a judgment of acquittal, this Court has reviewed the evidence presented by the parties in the light most favorable to the State. The State's evidence showed that the son, the son's wife, and the father went to a Marathon gas station near their family home in Williston, Florida; the son was driving the group in a silver Lexus. Shane Carnes and Robert Carter, Jr., arrived at the Marathon shortly thereafter. The two groups got into a yelling match over a driving altercation. Insults were exchanged, and at some point, Carnes ran toward the vehicle to punch them, but the son drove the trio away down a dirt road behind the Marathon.

Shane Carnes testified that several minutes later, he was pumping gas and turned around to see the son and the father each pointing a black handgun at his face. Carnes testified that the son and the father were moving closer to him and saying they were going to kill him. Carter was behind him during this interaction. In response to the threat, Carnes said he told the men to shoot him. According to Carnes, the son and the father began to walk away, but the father turned around, fired a shot, walked further away, and then fired another shot. When the son and the father returned to their vehicle, Carnes heard two more shots. They drove away from the Marathon down the same dirt road.

Robert Carter, Jr., testified he saw a vehicle that matched the co-defendants' return to the Marathon on the same dirt road. Two people got out of the vehicle and cut across the parking lot towards him and Carnes. The men had pistols in their hands, one silver pistol and the other black. Carter took a picture of the two men. Carter testified the men pointed the pistols at him and Carnes and yelled at them. Carter claimed the men chest-bumped Carnes into

2

the car before running back towards their own vehicle. Carter remembered only one shot being fired that day when he moved in front of a vehicle to shield himself, but he did not see who fired the shot.

The State also presented surveillance videos (without audio) from inside and outside the Marathon, the photograph taken from Carter's phone of the son and the father pointing firearms at him and Carnes, and an audio recording of the gas station attendant's 911 phone call, as well as other witnesses' testimony that generally supported Carnes's and Carter's version of events. From the surveillance footage, it is clear that the son and the father returned to the Marathon and that they ran right up to Carnes and Carter. It is also evident in the footage that the son drove himself and his father to and from the scene.

There is differing evidence, though, on how many shots were fired. Carnes testified that there were four shots and that the father discharged his weapon. Carter testified to having heard one shot. One of the surveillance videos shows that after confronting Carnes and Carter, upon their retreat, the father turns around two different times and appears to fire one to two shots before he and the son disappear down the dirt road. Notably, no witness testified to having seen the son, rather than his father, discharge his firearm.

The State presented only scant additional evidence to support that the son discharged his firearm. Testimony by a law enforcement officer showed that the son and the father were not arrested until eight days later. Upon arrest, an officer found a firearm in a crossbody bag secured to the son's chest. Another law enforcement officer testified that one shell casing was found near where the son and the father's vehicle appeared in the surveillance footage. The State introduced testimony of a firearms analyst stating that the spent casing matched the caliber of ammunition that could have been discharged from the firearm recovered from the son at the time of his arrest. That analyst also testified that the son's firearm contained eight unspent cartridges in its magazine but had the capacity to carry thirteen cartridges. Then, without any other explanation aside from her training and experience, the analyst testified she determined the cartridge case

3

was fired from the firearm retrieved from the son. On cross-examination, she admitted that she had no evidence that the son fired the pistol.

*Motion for Judgment of Acquittal*

After the State rested, the defense moved for judgment of acquittal, arguing the State had not proven a *prima facie* case of attempted first degree murder as to the son. The defense argued that none of the State's witnesses testified to having seen the son discharge a firearm.

The State asked for a jury instruction on principals as it had sought to prove the son's guilt as a principal to the father's conduct. To support the instruction, the State explained the son had been the driver of the vehicle, transporting his father to the scene and assisting in the escape. Moreover, the surveillance videos showed the son taking part in the perpetration of the crime. Alternatively, the State argued it had presented sufficient evidence that the son had discharged his firearm as there was testimony that he had possessed a firearm and that the spent shell casing recovered by law enforcement had been fired from the firearm retrieved at the son's arrest. In response, the defense made no objection to the principal theory being utilized by the State, arguing only that the enhancement of discharge of a firearm could only apply if the evidence showed the son discharged a firearm, not under the theory of principals.[1] The trial court denied the son's motion for judgment of acquittal and his renewed motion at the close of his case.

---

[1] Additionally, after the defense rested, when the parties conferred to confirm the jury instructions, the defense said it did not have any objection to the principal instruction as it was "standard." The defense also made no objection to the verdict form. And when the trial court read the principal instruction to the jury, the defense made no objection. On appeal, the defense has conceded that there was no issue at trial with the State attempting to prove the son's guilt under the principal theory, allowing that he had been charged as a principal by implication.

The court read the jury instructions, which included the instruction on principals. The jury found the son guilty of two counts of the lesser-included offense of attempted aggravated battery; that he did carry, display, use, threaten to use, or attempt to use a firearm during the commission of the offense; that he discharged a firearm; and that he actually possessed a firearm. The jury found the father guilty of two counts of an even lesser-included offense: aggravated assault. The trial then concluded for the day without the court rendering the defendants' judgments of conviction and sentences.

*The Trial Court's Reconsideration*

Eleven days later, the trial court *sua sponte* issued a notice to reconsider the son's motion for judgment of acquittal. At a hearing on this matter, the trial judge's main contention seemed to be that this Court had previously reversed a decision he had made in *Reno v. State*, 121 So. 3d 1174 (Fla. 1st DCA 2013). The trial court explained to the parties that in *Reno*, a husband was convicted of attempted second-degree murder, but this Court reversed the conviction and said the highest offense established was improper exhibition of a firearm. That decision was made notwithstanding the fact that in that case, a witness saw the husband fire a gun towards his wife. The trial court reasoned that the defendant in *Reno* must be more culpable than Perez Franco when no witness saw him discharge his weapon.

The trial court vacated its previous ruling and granted the son's motion for judgment of acquittal. The court found that the son was impermissibly found guilty of a crime in which he was not charged (read: discharge of a firearm) and that the evidence was insufficient to support a guilty verdict against him of any lesser-included offenses. The trial court also found the son could not be guilty as a principal as the information did not allege the son was a principal and a principal theory was not argued or included in the verdict form. The trial court then once against rested on *Reno* for the position that "[i]f the evidence in *Reno* (an eyewitness to the shooting) is insufficient to support a verdict of attempted manslaughter, it is necessarily insufficient (no eyewitness to the shooting) to support that verdict in the instant case."

5

At sentencing, the trial court adjudicated the father guilty and sentenced him before addressing the son. Regarding the son, the State reiterated that it had met its burden for the evidence to be considered by the jury and objected to the court granting the motion for judgment of acquittal. The State also asserted that a principal theory need not be charged and noted that the jury was instructed on the theory. Still, the trial court granted the son's motion for judgment of acquittal. This appeal by the State timely follows.[2]

*Appeal*

The State makes the same two arguments for reversal as it made at trial: 1) that it had provided sufficient evidence for the jury to consider that the son discharged his firearm and 2) alternatively, that it had provided sufficient evidence for the jury to consider that the son was a principal to the father's criminal actions. We now address each of these arguments in turn.

*Discharge of Firearm Enhancement*

The trial court correctly concluded that the State did not present a *prima facia* case that the son discharged his firearm.[3] Possession and discharge of a firearm are separate sentencing enhancements that when proven, impose statutory mandatory minimum sentences. A jury finding of *possession* of a firearm when

---

[2] The parties do not dispute the State's right to have appealed this non-final order. *See* § 924.07(1)(j), Fla Stat. ("The state may appeal from . . . [a] ruling granting a motion for judgment of acquittal after a jury verdict."); *see also* Fla. R. App. P. 9.130(a)(2) ("Appeals of nonfinal orders in criminal cases shall be as prescribed by rule 9.140."); Fla. R. App. P. 9.140(c)(1)(E) ("The state may appeal an order . . . granting a motion for judgment of acquittal after a jury verdict[.]").

[3] This Court notes that the State also did not charge the son with discharge of a firearm—only possession of one—but we do not reach this issue as we find the State did not provide sufficient evidence to prove a *prima facia* case that the son discharged a firearm.

a defendant is convicted of attempted aggravated battery (as the jury here found) raises the floor of a defendant's sentence from zero years to a mandatory minimum of ten years in prison, and a jury finding of *discharge* of a firearm in that same situation raises the mandatory minimum sentence to twenty years in prison. *See* § 775.087(2)(a), Fla. Stat.

A jury is allowed to draw reasonable inferences from the evidence presented at trial, and where a jury can make such inferences from the evidence to determine the guilt of a defendant, the facts must be decided upon by the jury, not the court. *See Sanchez v. State*, 182 So. 645, 648 (Fla. 1938) ("*If the evidence is conflicting or will admit of different reasonable inference*, or if there is evidence to prove the issue, *it should be submitted to the jury* as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law." (emphases supplied)); *see also Davis v. State*, 2 So. 3d 952, 967 (Fla. 2008) (finding that the evidence supported conviction of guilt where "the jury reasonably could have inferred" from the evidence that the defendant committed the crime.) However, a jury may not draw an inference from an inference rather than from the evidence presented by the parties. In such a situation, the court will find that the evidence is insufficient to support a conviction. *See Gustine v. State*, 97 So. 207, 208 (Fla. 1923) (holding that the evidence presented at trial was "not of the conclusive nature required to sustain the verdict" where "[o]nly by pyramiding assumption upon assumption and intent upon intent can the conclusion necessary for conviction be reached"); *Baugh v. State*, 961 So. 2d 198, 205 (Fla. 2007) ("[E]vidence is insufficient to support a conviction when it requires pyramiding of assumptions or impermissibly stacked inferences").

According to the evidence presented by the State in this case, no firearm was retrieved from either defendant until law enforcement recovered a firearm on the son's person at the time of his arrest—over a week after the incident. It was never confirmed whether that was the same firearm the son had on him the day of the altercation with Carnes and Carter. Rather, the evidence only confirmed that the spent shell casing found near the Marathon on the day after the incident matched the caliber of ammunition fired from the weapon recovered from the son more than a week later.

It was also never ruled out what caliber of ammunition the father's gun used as his weapon was not recovered. And no witness testified to having seen the son discharge his firearm. The spent shell casing seems to have been found near the area where the surveillance footage showed and witness testimony described that the father fired at least one shot. No rational trier of fact could infer from the above evidence that the son discharged his firearm. Pyramiding inferences is not something the jury is permitted to do. For that reason, we order the trial court to strike the discharge of a firearm enhancement from the jury's findings.

*Conviction as a Principal*

Still, the trial court erred in granting the son's motion for judgment of acquittal as the State provided sufficient evidence to support a *prima facia* case that the son was guilty of having committed a crime as a principal to his father's actions. Under section 777.011, Florida Statutes, a person who "commits any criminal offense against the state" and a person who "aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed *or is attempted to be committed*," legally stands in the same position as both people are "a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense." (Emphasis supplied.) It is apparent from the record that the State provided ample evidence for the jury to find that the father discharged a firearm towards Carnes and Carter, intending but failing to shoot them, and that the son aided his father in the commission of this offense.

The supreme court has elucidated on when a defendant is guilty as a principal: "In order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime." *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988); *Garzon v. State*, 980 So. 2d 1038, 1041 (Fla. 2008) (observing that so long as the principal theory applies, the jury could convict defendant A based on defendant B's actions, provided defendant A "had a conscious intent that the criminal acts be done" and defendant A "did or said something to aid or encourage those

8

acts"). The supreme court has also further explained that it is immaterial whether the charging document explicitly names the defendant as a principal:

> a person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and *it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute*.

*State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971) (emphasis supplied). "The principals instruction may be given if the evidence adduced at trial supports such an instruction." *McGriff v. State*, 12 So. 3d 894, 895 (Fla. 1st DCA 2009). It is of no moment whether the verdict form expressly includes the term "principal"; where there are co-defendants and "[t]he jury's verdict was a general verdict . . ., if the evidence was sufficient to prove either count of the . . . [charging document,] the verdict should not be disturbed." *Jimenez v. State*, 30 So. 2d 292, 297 (Fla. 1947).

When co-defendants are tried jointly, there is a chance that one defendant may be found guilty by the jury of a lesser offense than another defendant. That is what happened in this case where the jury found the son guilty of the lesser-included offense of attempted aggravated battery with possession and discharge of a firearm but the father guilty of an even lesser-included offense of aggravated assault. This seeming inconsistency in the verdicts though is not true inconsistency and is generally allowed in Florida. *State v. Powell*, 674 So. 2d 731, 732–33 (Fla. 1996) ("As a general rule, inconsistent jury verdicts are permitted in Florida."); *id.* at 733 ("Inconsistent verdicts against jointly tried conspirators are not truly inconsistent and we find no compelling reason to except such verdicts from the general rule."). The supreme court has reasoned that

> [i]nconsistent verdicts are allowed because jury verdicts can be the result of lenity and therefore do not always speak to the guilt or innocence of the defendant. Moreover, defendants have adequate procedural and

9

> constitutional protections to ensure that their convictions
> are not erroneous, whereas the State does not have the
> benefit of any reciprocal protections.

*Id.* (internal citations omitted). *See also Eaton v. State*, 438 So. 2d 822 (Fla. 1983) (approving seemingly inconsistent verdicts of jointly tried co-defendants where the evidence was sufficient to sustain a conviction of the charged offense against each defendant).

The jury did not return an inconsistent verdict in this case when it found the son guilty of a higher crime than it found the father guilty of notwithstanding the fact that the two defendants were jointly tried and the evidence demonstrated that the father discharged his firearm while the son only possessed a firearm. The jury's verdicts are permissible as it could have found the son guilty as a principal to his father's actions against Carnes and Carter and for whatever reason, chose to be more lenient to the father than to the son, the aider of the crime.

There is sufficient evidence that the son aided the father in the commission of the offenses charged as the son's assistance was temporally and physically simultaneous to the father's actions in committing the offenses. *See Neumann v. State*, 156 So. 237, 239 (1934) ("A principal in the second degree is one who aids in the commission of a felony . . . *by being present*, aiding and abetting the commission of the felony *at the time* it is perpetrated." (emphases supplied) (internal quotations omitted)); *State v. Lowery*, 419 So. 2d 621, 623 (1982) (defining a second-degree principal as a "person who does not commit the crime with his own hands but is present, aiding and abetting the actual perpetrator"); *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988) ("[T]o be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in *actually committing the crime*." (emphasis supplied)); *cf. Williams v. State*, 314 So. 3d 775, 782–83 (Fla. 1st DCA 2021) (differentiating a principal in the second degree who aids or abets a crime from an accessory before the fact who merely promotes or incites a crime based on that person's actions and his temporal and physical proximity to the offense). Here, the State sufficiently demonstrated a *prima facie* case that the son was

guilty as a principal as the evidence showed he drove his father to and from the Marathon to commit the offense and flee the scene; the son ran alongside his father to confront Carnes and Carter; and both the son and his father possessed firearms and pointed them at Carnes and Carter during the altercation. So, the fact that the father was the only one to discharge a firearm is of no moment here as the son clearly aided his father's actions.

However, the principal theory only gets the State so far in that it allows the jury to consider the evidence against the son to find him guilty as charged or guilty of one of the lesser-included offenses. What the son cannot be found criminally culpable of as a principal, though, is the criminal enhancements of possession and discharge of a firearm. *See State v. Rodriguez*, 602 So. 2d 1270, 1272 (Fla. 1992) ("We hold that, when a defendant is charged with a felony involving the 'use' of a weapon, his or her sentence cannot be enhanced under section 775.087(1) without evidence establishing that the defendant had personal possession of the weapon during the commission of the felony."); *id.* (rejecting the "State's contention that . . . [the defendant's] sentence should be enhanced on the theory of constructive or vicarious possession based on the conduct of the codefendant" where the evidence "plainly establishe[d]" defendant did not "have personal possession" of a gun "during the commission of the felony"). Here, there was only evidence sufficiently shown that the son possessed a firearm and not that he discharged one, and he cannot be guilty of the discharge enhancement as a principal.

*Guilty Verdict Reinstated*

On remand, no retrial is necessary, and the jury's guilty verdict must be reinstated. *See Hudson v. State*, 711 So. 2d 244, 246 (Fla. 1st DCA 1998) (explaining that "[i]f the state prevails on an appeal from a post-verdict judgment of acquittal, the jury's guilty verdict is reinstated, the trial judge's contrary determination is set at naught, and the defendant's position after the appeal is the same as it was before the trial judge granted the motion for judgment of acquittal. No retrial is necessary"); *see also* § 924.34, Fla. Stat. (mandating that if this Court determines "the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of

11

the offense or a lesser offense necessarily included in the offense charged," then this Court "shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense"). The father's actions described previously satisfy the elements of attempted aggravated battery as he took actions to commit a battery, though ultimately failed to commit battery, and used a deadly weapon in that attempt. *See* §§ 784.045(1)(a)2., 777.04(1), Fla. Stat. The evidence shows the son aided in that offense. Therefore, the State sufficiently demonstrated that the son is guilty of this offense as a principal.

## *Conclusion*

Accordingly, we reverse and remand with instructions for the trial court to reinstate the verdict, striking the discharge enhancement under section 775.087(2)(a). We direct the trial court to enter a judgment of conviction of attempted aggravated battery as to the son in line with the jury's verdict with the added sentencing enhancement of possession of a firearm.

REVERSE and REMAND.

LEWIS, ROBERTS, and BILBREY[4], JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

James Uthmeier, Attorney General, and Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellant.

---

[4] Judge Bilbrey was substituted for an original panel member in this proceeding after oral argument. He has viewed the digital video recording of oral argument.

Robert R. Berry of The Law Office of Robert R. Berry P.A.,
Tallahassee, for Appellee.